IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**DEBORAH D. PAGE**                                                                    **PLAINTIFF**

**VERSUS**                                         **CIVIL ACTION NO. 2:12cv105-KS-MTP**

**CAPTAIN D'S LLC;**
**RUDY RHODES, INDIVIDUALLY;**
**ANTWINE THAMES, INDIVIDUALLY;**
**MASARA WHITE, INDIVIDUALLY;**
**JOHN DOES 1-10; AND**
**JOHN DOES, LLC OR INC. 1-10**                                                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendants' Motion to Dismiss and to Compel Arbitration [3]. Having considered the motion, the response, the record and the applicable law, the Court finds that the Defendants' motion is well taken and should be granted.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Deborah Page asserts numerous claims for relief, including, but not limited to, sexual harassment and retaliatory discharge, against Captain D's, LLC ("Captain D's"), Rudy Rhodes, Antwine Thames and Masara White subsequent to the termination of her employment in September of 2011.

Plaintiff was hired by Captain D's on or about June 20, 2011, as an assistant manager for its restaurant in Laurel, Mississippi. In relation to her hiring, Plaintiff signed an Employee Dispute Resolution Agreement ("Resolution Agreement") [3-1], in which she acknowledged receiving and reading Captain D's Employee Dispute Resolution Plan ("Resolution Plan") and agreed to abide by its terms. Plaintiff further waived any

right to have a jury decide any legal claim against Captain D's and acknowledged:

> I understand that, if I file a lawsuit regarding a claim against the Company, including any claim arising out of or relating to my application for employment, my employment, or the termination of my employment, the Company may use this agreement to support its request for the court to dismiss the lawsuit and require me to resolve my claim in accordance with the Plan.

(*See* Resolution Agreement [3-1].) The Resolution Plan the Plaintiff agreed to abide by applies to:

> [A]ny and all legal claims, demands or controversies between the Company and its employees, including those that relate to, arise from, concern, or involve in any way this Plan, the employment of the employee, or any other matter between the Company and the employee, whether or not involving the employee's employment with the Company. By way of example and without limitation, this Plan covers allegations of discrimination based on race, sex, religion, age, ethnic origin, national origin, color, disability or handicap; wage disputes; retaliation for exercising legal rights or refraining in engaging in illegal activity; defamation; infliction of emotional distress; invasion of privacy; promissory estoppel; wrongful discharge or wrongful termination; breach of fiduciary duties; breach of contract; negligence; and willful misconduct.

(*See* Resolution Plan [3-2] at p. 1.) The Resolution Plan also applies to any legal claims against Captain D's "directors, limited liability company managers, officers, employees, and agents . . . ." (*See* Resolution Plan [3-2] at p. 1.) Three steps are provided for the resolution of disputes under the Resolution Plan: 1) internal discussions, 2) mediation and 3) arbitration. Captain D's or the employee may elect to pursue final and binding arbitration administered by the American Arbitration Association if the dispute is not resolved through internal discussions or mediation. (*See* Resolution Plan [3-2] at p. 3.)

Plaintiff participated in training classes in Jackson, Mississippi, during the first few weeks of her employment with Captain D's. The classes were taught by Roberta

2

Harris, a general manager for Captain D's, and Defendant Masara White, an assistant manager for Captain D's.  Plaintiff alleges that the managers and trainees were encouraged to exchange personal contact information during the training process.  Plaintiff contends that after Defendant White received her telephone number, he "sent [her] severely lewd, inappropriate, demeaning, and sexual text messages . . . ." (*See* Complaint [1] at ¶ 13.)  Purportedly, several of Defendant White's text messages included language requesting oral sex and attempted to lure the Plaintiff into sexual relations.  The Plaintiff allegedly reported receiving Defendant's White inappropriate text messages to Roberta Harris.  Ms. Harris then allegedly notified Defendant Antwine Thames, an area director for Captain D's, of the text messages.  Plaintiff claims that Defendant Thames took no action to investigate her allegations because he was a friend of Defendant White.  Plaintiff further claims that Defendant White's unwanted advances lasted several weeks and stopped only after her consistent, repeated rejections.  Captain D's purportedly made no effort to investigate or resolve Plaintiff's allegations against Defendant White.

On or about July 11, 2011, Plaintiff began working at the Captain D's restaurant in Laurel, Mississippi.  Plaintiff alleges that on or about July 15, 2011, Defendant Rudy Rhodes, the manager at the restaurant, "commenced inappropriate communications, behavior, and sexual advances . . . ." (*See* Complaint [1] at ¶ 18.)  Defendant Rhodes allegedly approached the "Plaintiff in the kitchen, applied pressure to her arm, and physically forced her into a corner where she was not free to leave." (*See* Complaint [1] at ¶ 18.)  Defendant Rhodes then allegedly told the Plaintiff that his wife was going out

3

of town for the weekend and asked if she wanted to "take his wife's place" and further said that they could "have sex and just have fun." (*See* Complaint [1] at ¶ 18.) Plaintiff reportedly spurned Defendant Rhodes' advances and he allowed her to resume her work duties. However, Defendant Rhodes allegedly followed up on his inappropriate conduct by sending the Plaintiff several text messages of a sexual nature between the afternoon of July 15 and the early morning hours of July 16.

On or about July 16, 2011, Plaintiff called Roberta Harris and advised her of Defendant Rhodes' alleged sexual advances and harassment. Ms. Harris allegedly told the Plaintiff words to the effect that reporting the incident to the area director, Defendant Thames, would be ineffective in light of his prior failure to investigate Plaintiff's allegations of sexual harassment against Defendant White. Ms. Harris also allegedly told the Plaintiff that the matter would be "taken care of", but Captain D's took no disciplinary action against Defendant Rhodes.

Plaintiff contends that after she went back to work on July 16, 2011, she was subjected to a hostile work environment for more than one month. During this time, Defendant Rhodes purportedly slashed her hours, demeaned her in front of others, and made suggestive and provocative comments such as, "You know you want some of this." (*See* Complaint [1] at ¶ 23.) Defendant Rhodes supposedly made it known that the Plaintiff should have sexual relations with him and, at times, prevented the Plaintiff from moving freely during the performance of her job duties. Plaintiff allegedly rejected Defendant Rhodes' repeated advances and waited for Captain D's management to step in and rectify the situation.

Plaintiff claims that Defendant Rhodes terminated her for insubordination on September 2, 2011, and that no write-ups or warnings supported the termination. Plaintiff subsequently requested a meeting with Defendant Thames relating to her claims of harassment which took place on or about September 7, 2011, at the Captain D's in Laurel.  Plaintiff contends that during the meeting Defendant Rhodes and Defendant Thames attempted to cover up the sexual harassment by offering to give her back her old position.  It is alleged that the Plaintiff subsequently advised Defendant Thames that she would be filing a complaint with the Equal Employment Opportunity Commission ("EEOC"), and that Defendant Thames then informed the Plaintiff that he would not contest her unemployment benefits if she would forego pursuing a sexual harassment claim.  (*See* Complaint [1] at ¶ 28.)

On September 12, 2011, Plaintiff filed a discrimination claim, alleging sexual harassment, against Captain D's with the EEOC.  (*See* Charge of Discrimination [1-2].) On April 25, 2012, the EEOC provided notice that it was closing its file on the Plaintiff's claim and that she had ninety (90) days to file suit in federal or state court.  (*See* Dismissal and Notice of Rights [1-3].)  On July 19, 2012, Plaintiff filed this lawsuit against Captain D's, Rudy Rhodes, Antwine Thames and Masara White.  (*See* Complaint [1].)

Plaintiff's Complaint [1] asserts that federal subject matter jurisdiction exists under 28 U.S.C. §§ 1331 and 1343.  Plaintiff alleges claims of sexual harassment and retaliatory discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e

5

*et seq.* ("Title VII").  The following state law claims are also pled:  the tort of outrage,[1] intentional and/or negligent infliction of emotional distress, negligent supervision/hiring, and intentional assault and battery.

On July 31, 2012, Defendants filed their Motion to Dismiss and to Compel Arbitration [3].  Defendants assert that all of Plaintiff's claims are subject to arbitration pursuant to the Resolution Agreement [3-1] and Resolution Plan [3-2].  Defendants seek an order compelling arbitration and the dismissal of the action or, alternatively, a stay of proceedings pending the completion of arbitration.  The Motion [3] has been fully briefed and the Court is ready to rule.

## II.  DISCUSSION

### A. The Federal Arbitration Act

The Federal Arbitration Act (the "FAA") provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Courts are to broadly interpret the phrase "involving commerce" to the full extent of Congress' powers under the Commerce Clause.  *See Allied-Bruce Terminex*

---

[1] In Mississippi, this "tort is considered equivalent to the claim of intentional infliction of emotional distress." *Maas v. City of Ocean Springs*, No. 1:11cv287, 2012 WL 2603620, at *4 (S.D. Miss. July 5, 2012) (citing *Jones v. Jackson State Univ.*, No. 3:07cv72, 2008 WL 682411, at *5 (S.D. Miss. 2008); *Bombadier Capital, Inc. v. Royer Homes*, No. 1:04cv884, 2006 WL 1328907, at *3 n.2 (S.D. Miss. May 15, 2006)). Because Plaintiff's Complaint also alleges intentional infliction of emotional distress, her "tort of outrage" claim is duplicative and will not be referenced again in this opinion.

*Companies, Inc. v. Dobson*, 513 U.S. 265, 273-74, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995).  "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'"  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57, 123 S. Ct. 2037, 156 L. Ed. 2d 46 (2003) (citation omitted).  In the context of the FAA, "'control over interstate commerce reaches not only the actual physical interstate shipment of goods but also [extends to] contracts relating to interstate commerce.'"  *Miss. Fleet Card, L.L.C. v. Bilstat, Inc.*, 175 F. Supp. 2d 894, 898 (S.D. Miss. 2001) (quoting *Dobson*, 513 U.S. at 273-74).

The United States Supreme Court has held that employment contracts, except for those pertaining to transportation workers, fall within the scope of the FAA.  *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001)).  Plaintiff's employment agreement with Captain D's did not pertain to transportation.  Further, the Plaintiff does not dispute the applicability of the FAA to the arbitration agreement before the Court.  Thus, the parties' arbitration agreement is subject to the FAA.

Since the FAA covers the parties' agreement, so does the "'strong federal policy in favor of enforcing arbitration agreements.'"  *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (quoting *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prod. Co.*, 243 F.3d 906, 909 (5th Cir. 2001)).  Within this policy is

7

the rule "that any [d]oubts as to the availability of arbitration must be resolved in favor of arbitration." *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999) (citation and internal quotation marks omitted). The Court recognizes that strong federal policy in support of arbitration agreements and is acutely aware of the Supreme Court's requirement that courts "'rigorously enforce agreements to arbitrate.'" *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)).

Compelling arbitration under the FAA is a two-step process. *See Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006). A court must first "determine whether the parties agreed to arbitrate the dispute in question." *Id.* (citations omitted). This requires two individual "'considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 396 (5th Cir. 2006) (quoting *Webb v. Investacorp., Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). Once the court finds that the parties agreed to arbitrate the dispute, it must determine "whether legal constraints external to the parties' agreement foreclose[] the arbitration of those claims." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985).

  **B. The FAA Applied to This Dispute**

    **1. The Parties Agreed to Arbitrate the Subject Dispute**

Courts are to apply ordinary state-law principles governing the formation of

contracts in deciding whether the parties agreed to arbitrate a dispute. *See Webb*, 89 F.3d at 258 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995)). However, in applying state law, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Id.* (citation omitted). The Mississippi Supreme Court has recognized and applied the federal policy favoring arbitration. The FAA "'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Sawyers v. Herrin-Gear Chevrolet Co.*, 26 So. 3d 1026, 1034 (¶ 20) (Miss. 2010) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)).

### a.     There Is a Valid Agreement to Arbitrate Between the Parties

The Plaintiff admits the existence of an arbitration agreement concerning matters related to her employment with Captain D's. (*See* Pl's. Resp. in Opp'n [8] at p. 8.) Also, the Plaintiff does not challenge the individual Defendants' ability to enforce the arbitration provisions in the Resolution Agreement [3-1] and Resolution Plan [3-2]. Instead, and as will be addressed below, the Plaintiff contends that her claims against "Captain D's and its agents are unquestionably outside of the scope of the arbitration agreement . . . ." (*See* Pl's. Resp. in Opp'n [8] at pp. 9-10.) Because the Plaintiff does not contest the validity of the arbitration agreement and because the agreement clearly

applies to any legal claims against Captain D's "managers, officers, employees, and agents,"[2] the Court finds that a valid arbitration agreement exists that may require the Plaintiff to arbitrate her claims against all of the Defendants.

### b. All of Plaintiff's Claims Fall Within the Scope of the Parties' Arbitration Agreement

The Plaintiff principally argues that arbitration is not in order because all of her "claims could be maintained independently without regard to her employment relationship with Defendants." (*See* Pl's. Resp. in Opp'n [8] at p. 11.)  Plaintiff relies on the following authorities in support of this argument:  *Jones v. Halliburton Co.*, 625 F. Supp. 2d 339 (S.D. Tex. 2008), *aff'd*, 583 F.3d 228 (5th Cir. 2009); *Smith v. Captain D's, LLC*, 963 So. 2d 1116 (Miss. 2007); and *Niolet v. Rice*, 20 So. 3d 31 (Miss. Ct. App. 2009).  In *Jones*, plaintiff's claims of sexual harassment and hostile work environment under Title VII, breach of contract, and fraud in the inducement were found to be arbitrable; while claims of assault and battery, intentional infliction of emotional distress, negligent hiring/retention/supervision, and false imprisonment were held to fall outside the scope of an arbitration provision.  625 F. Supp. at 344, 355.  In *Captain D's*, the court held that plaintiff's allegations of negligent hiring, supervision, and retention based upon an alleged rape by a supervisor did not fall within the scope of an arbitration agreement.  963 So. 2d at 1117 (¶ 1), 1121 (¶ 17).  In *Niolet*, the court found "that a claim for assault and battery in no way touches upon matters covered by the [arbitration] agreement."  20 So. 3d at 34 (¶ 7).

---

[2] (*See* Resolution Plan [3-2] at p. 1.)

Plaintiff's apparent contention that her claims for sexual harassment and retaliatory discharge under Title VII are not related to her employment, and thus are not arbitrable, is wholly without basis.  The subject arbitration agreement specifically encompasses claims "of discrimination based on . . . sex[;] . . . retaliation for exercising legal rights or refraining in engaging in illegal activity; . . . [and] wrongful discharge or wrongful termination . . . ."  (*See* Resolution Plan [3-2] at p. 1.)  The district court in *Jones* compelled arbitration of Title VII claims of sexual harassment and hostile work environment.  625 F. Supp. 2d at 344, 355.  There were no Title VII claims at issue in *Captain D's* or *Niolet*.  Plaintiff cannot state a claim for sexual harassment or retaliatory discharge under Title VII, which "was enacted to prevent *employment* discrimination or harassment",[3] in the absence of her prior employment relationship with the Defendants.  Plaintiff's Title VII claims are clearly within the scope of the parties' arbitration agreement.

Plaintiff's remaining state law claims also fall within the scope of the arbitration agreement, which applies to any and all legal claims between the Plaintiff and Defendants "*whether or not* involving the employee's employment relationship with the Company."  (*See* Resolution Plan [3-2] at p. 1.) (emphasis added).  The arbitration provisions before the courts in *Jones*, *Captain D's*, and *Niolet* were narrower than the subject provision in that they only encompassed employment related claims.[4]  Courts

---

[3] *Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) (emphasis added).

[4] *See Jones*, 625 F. Supp. 2d at 343 (agreement applied to "any and all claims that you might have against Employer related to your employment . . ."); *Captain D's*, 963 So. 2d at 1120 (¶ 15) (arbitration clause encompassed "any and all previously

considering arbitration agreements encompassing claims "whether or not" related to employment have found allegations similar to those made by Plaintiff Deborah Page subject to arbitration.[5]

"'Unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted.'" *Citigroup Global Markets, Inc. v. Braswell*, 57 So. 3d 638, 641-42 (¶ 10) (Miss. Ct. App. 2011) (quoting *IP Timberlands Operating Co., Ltd. v. Denmiss Corp.*, 726 So. 2d 96, 107 (Miss. 1998)). The Court is unable to say with positive assurance that Plaintiff's claims of intentional and/or negligent infliction of emotional distress, negligent supervision/hiring, and assault and battery fall outside the scope of her broad agreement to arbitrate any and all legal claims "whether or not" those claims involved her employment with Captain D's. (*See* Resolution Plan [3-2] at

---

unasserted claims, disputes, or controversies arising out of or relating to my application for employment, employment and/or cessation of employment with Captain D's . . ."); *Niolet*, 20 So. 3d at 33 (¶ 7) (agreement covered "all matters directly or indirectly related to . . . recruitment, potential employment, or possible termination of employment . . ."). Notably, Defendants assert that subsequent to the Mississippi Supreme Court's decision in *Captain D's*, the company broadened the scope of its arbitration provisions to the form of the agreement presently before the Court. (*See* Defs.' Reb. Mem. [9] at p. 3.)

[5] *See Shimkus v. O'Charley's, Inc.*, No. 1:11cv122, 2011 WL 3585996, at *3, 4 (N.D. Ind. Aug. 16, 2011) (compelling arbitration of claims of sexual harassment, discrimination, and retaliation in violation of Title VII, and state law claim of intentional infliction of emotional distress); *Monzon v. S. Wine & Spirits of Cal.*, 834 F. Supp. 2d 934, 938, 941, 943 (N.D. Cal. 2011) (same as to complaint alleging wrongful termination, retaliation based on Plaintiff's sexual orientation, intentional interference with business advantage, and fraud); *Moss v. Rent-A-Center, Inc.*, No. 06cv3312, 2007 WL 2362207, at *1, 8 (E.D.N.Y. Aug. 15, 2007) (same as to claims of sexual harassment, retaliation, assault, and battery); *Morales v. Rent-A-Center, Inc.*, 306 F. Supp. 2d 175, 178-79, 185 (D. Conn. 2003) (same as to allegations of employment discrimination, including claims that plaintiff was subjected to verbal abuse regarding his sexuality and "spoken to in a 'rude' and 'brutal' manner").

p. 1.) The Court would be hard pressed to deny arbitration of Plaintiff's state law claims even if the subject arbitration agreement were limited to employment related disputes. In *Jones*, the Fifth Circuit did "not hold that, as a matter of law, sexual-assault allegations can never 'relate to' someone's employment." 583 F.3d at 241. Instead, the Fifth Circuit found the following allegations underlying plaintiff's claims to breach the outer limits of an arbitration provision containing "related to" language:

> (1) Jones was sexually assaulted by several Halliburton/KBR employees *in her bedroom, after-hours*, (2) while she was *off-duty*, (3) following a social gathering outside of her barracks, (4) which was some distance from where she worked, (5) at which social gathering several co-workers had been drinking (which, notably, at the time was only allowed in "non-work" spaces).

*Jones*, 583 F.3d at 240-41. In this case, much of the misconduct alleged by the Plaintiff appears to have occurred at the workplace, while she was on-duty.

For the foregoing reasons, the Court concludes that the parties agreed to arbitrate this dispute.

### 2. No Legal Constraints External to the Parties' Agreement Preclude the Court from Compelling Arbitration

Plaintiff argues that the Defendants waived their ability to compel arbitration, step three of the Resolution Plan [3-2], by failing to participate in steps one and two of the plan, internal discussions and mediation. Plaintiff relies on numerous Mississippi state court opinions in support of this argument. However, federal law controls the issue of waiver of the right to compel arbitration in federal court. *See S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (holding that the determination of whether a party waived its right to compel arbitration was "controlled solely by federal

13

law") (citing *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.*, 625 F.2d 22, 25 n.8 (5th Cir. 1980); *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 551 F.2d 1026, 1040 (5th Cir. 1977)).

    As a preliminary matter under the FAA, the Court must determine whether Plaintiff's waiver argument is for it or the arbitrator to decide. Certain gateway matters, such as whether a valid arbitration agreement exists or whether an arbitration clause encompasses a particular dispute (*see* Part II.B.1 of this opinion), are presumptively for courts to decide. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S. Ct. 2402, 156 L. Ed. 2d. 414 (2003). However, procedural questions relating to the arbitrability of a dispute (such as "waiver, delay, or a like defense to arbitrability") or prerequisites to arbitration (such as "notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate"), are presumptively for arbitrators to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (citations and internal quotation marks omitted). The Circuit Courts of Appeals have for the most part interpreted *Howsam* to require courts to decide whether a party has waived his right to compel arbitration by litigating a matter, and arbitrators to decide defenses "arising from non-compliance with contractual conditions precedent to arbitration." *Grigsby & Assocs., Inc. v. M. Sec. Inv.*, 664 F.3d 1350, 1353-54 (11th Cir. 2011) (citations and internal quotation marks omitted).

    Plaintiff's waiver argument rests on Defendants' alleged failure to comply with provisions of the Resolution Plan [3-2], as opposed to any litigation activities taken by the Defendants. (See Pl's. Resp. in Opp'n [8] at p. 12.) ("Because the Defendants have

failed to address and abide by the first two steps of their own process, they should not be allowed to rely solely on the arbitration provision contained in step three.")  Internal discussions and mediation, steps one and two under the Resolution Plan [3-2], appear to constitute "procedural condition[s] precedent that the trial court should not review." *Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009) (finding that arbitrators, as opposed to the trial court, were to decide the amount each party would pay in arbitration fees); *see also C.E. Franklin, Inc. v. Ray Angelini, Inc.*, No. 07-2652, 2008 WL 1902188, at *3 (E.D. Pa. 2008) (holding that an arbitrator should decide an objection to arbitration based on the parties not completing mediation, an alleged condition precedent to arbitration).

Moreover, Plaintiff's objection to arbitration based upon Captain D's alleged failure to resolve her dispute internally by taking remedial action against Defendants Rhodes and White (*see* Pl's. Resp. in Opp'n [8] at pp. 12-13), is inextricably intertwined with the merits of the allegations in the Complaint that Captain D's management failed to investigate and take action in response to Plaintiff's allegations of sexual harassment against these individual Defendants.  (*See* Complaint [1] at ¶¶ 15, 22).  Neither logic nor policy considerations require "intertwined issues of 'substance' and 'procedure' growing out of a single dispute and raising the same questions on the same facts . . . to be carved up between two different forums . . . ."  *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964).  As the merits of this dispute are for the arbitrator to decide, the Court will leave for him or her Plaintiff's related condition precedent objection to arbitration.  *See Int'l Bhd. of Elec. Workers, Local 2188*

15

*v. W. Elec. Co.*, 661 F.2d 514, 517 (5th Cir. 1981) ("[T]he merits are for the arbitrator, not the court, to decide.") (citation omitted).

No other alleged legal constraints to arbitration have been raised by the Plaintiff. Thus, the two necessary steps to compel arbitration have been satisfied and the Court will order Plaintiff's claims against all of the Defendants to arbitration in accordance with the Resolution Agreement [3-1] and Resolution Plan [3-2].

### C.     Dismissal of This Cause Is Appropriate

Trial "courts have discretion to dismiss cases in favor of arbitration under 9 U.S.C. § 3." *Fedmet Corp.*, 194 F.3d at 676 (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).  Further, "[t]he weight of authority clearly supports dismissal of the case when *all* of the issues . . . must be submitted to arbitration." *Alford*, 975 F.2d at 1164 (citations omitted).  Staying proceedings pending the completion of arbitration between the parties would serve no purpose since all of the issues are referable to arbitration.  *See id.*  Any post-arbitration litigation activities would not entail an on-the-merits determination of the parties' dispute, but instead would be limited to consideration of the arbitration award under the narrow scope of review supplied by the FAA.  *See id.*  Therefore, this case will be dismissed without prejudice.

### D.     Attorneys' Fees and Costs

The Plaintiff and the Defendants request their costs and attorneys' fees associated with the Motion to Dismiss and to Compel Arbitration [3].  None of the parties have cited any statute, rule of procedure, or court opinion supporting such relief.  The Court finds that neither the Plaintiff nor the Defendants have evidenced any right to an

award of attorney's fees.  Further, the Court does not consider the Defendants to be prevailing parties for purposes of awarding costs under Federal Rule of Civil Procedure 54(d) since this action will be dismissed without prejudice and the merits of Plaintiff's claims are to be resolved in a different forum.  *Cf. Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 103 (2d Cir. 2006) (holding that "a defendant who successfully obtains a dismissal on *forum non conveniens* grounds is not a 'prevailing party' entitled to costs under Rule 54(d) . . .").

### III.  CONCLUSION

For the above-stated reasons:

IT IS ORDERED AND ADJUDGED that Defendants' Motion to Dismiss and to Compel Arbitration [3] is granted and that all of Plaintiff's claims against all of the Defendants are compelled to arbitration pursuant to the parties' arbitration agreement. A separate judgment dismissing this action without prejudice will be entered this date pursuant to Rule 58 of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff and Defendants' requests for costs and attorneys' fees associated with the Motion to Dismiss and to Compel Arbitration [3] are denied.

SO ORDERED AND ADJUDGED this the 27th day of November, 2012.


*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE